**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

In re:

    AUBREY BRUCE WRING and                     Case No. 10-21899-pjd
    VIRGINIA A. WRING,                             Chapter 11
        Debtors.

---

**CHAPTER 11 TRUSTEE'S MOTION FOR AN ADMINISTRATIVE ORDER
APPROVING SALE AND BID PROCEDURE PURSUANT TO
SECTIONS 105(a), 363 and 365 OF THE BANKRUPTCY CODE**

---

      Michael P. Coury, Chapter 11 Trustee for Aubrey Bruce Wring and Virginia A. Wring (herein, the "Trustee" or "Movant") moves this Court for a supplemental administrative order pursuant to 11 U.S.C. §§ 105, 363, 1106 and other applicable sections of the United States Bankruptcy Code establishing sale and bid procedure guidelines under which the Trustee shall have the authority to sell all or part of the real property of the Debtors in multiple parcels and assign any executory contracts or unexpired leases relating to such property subject to the provisions set forth below. In support of said motion the Trustee would show unto the Court as follows:

**I. JURISDICTION AND VENUE**

      1.     This Court has jurisdiction of the subject matter herein and the parties hereto pursuant to 28 U.S.C. §§157 and 1334; 11 U.S.C. §§105, 363 1106 and 1108, and related statutes and rules, as well as various orders of reference. This is a core proceeding.

**II. BACKGROUND**

      2.     On February 19, 2010 (the "Petition Date"), the Debtors filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code. On June 2, 2011, Michael P.

1

Coury was appointed as Chapter 11 Trustee in this case.

3. The Debtors are individuals who reside in Memphis, Tennessee.

4. The Debtors own approximately 400 hundred parcels of real property located primarily in or around west Tennessee and north Mississippi, Arkansas and Georgia. The properties consist primarily of single family residences as well as raw land and commercial sites. The Debtors' ordinary course of business includes the renting of the residential properties owned by them or in non-debtor entities in which they have an interest pursuant to lease purchase agreements, and buying and selling properties.

5. The Trustee previously filed a Motion for an Administrative Order Approving Sale Procedure [Doc. No. 907], which was granted by the Court on August 22, 2011 [Doc. No. 951], which granted the Trustee the authority to (i) sell the real property owned by the Debtors pursuant to certain notice provisions and (ii) sell real property owned by non-Debtor entities in which the Debtors' estate had an ownership interest not subject to Court approval. This procedure was intended to facilitate the sale of individual properties in the ordinary course of business, rather than bulk sales of multiple parcels of property.

6. On May 5, 2012 the Trustee filed a Motion for authority to revoke The Wring Family Revocable Trust and to transfer the real property therein, as well as real property in the name of Wring Real Estate, LLC, into the names of the Debtors [Doc. No. 1068]. That motion was granted on May 25, 2012 [Doc. No. 1079] and pursuant to which 83 properties from The Wring Family Revocable Trust and 93 properties from Wring Real Estate, LLC were transferred back into the individual names of the Debtors.

7. While the Trustee believes that a sale of properties titled in the name of the

Debtors may be an ordinary course of business transaction not requiring court approval pursuant to § 363(b), the Trustee desires to avoid any dispute over whether or not a proposed sale is in the ordinary course due to the substantial amount of properties which the Trustee contemplates selling (in bulk sale(s) or otherwise) in preparation of filing a feasible Plan of Reorganization on behalf of the Debtors' estate.  Therefore, the Trustee desires with the Court's approval, to establish a sale procedure to govern any potential transfers of all, or some lesser but material portion, of the Debtors' real property without prejudice to the Trustee's utilization of the current sale procedure to facilitate the sale of individual properties on a piece by piece basis.

8.      The Trustee has received inquiries and letters of intent from potential purchasers who desire to make offers for portions of the Debtor's real property portfolio.  The Trustee has not made a determination as to the feasibility of any of the potential offers due to the significant variations each offer carries in terms of the number of properties to be purchased, the net purchase proceeds, realizable equity in light of outstanding liens, and profitability of the remaining portfolio.

9.      Through the process of evaluating offers received by the Trustee, the Trustee contemplates that the consideration to be paid by one or more purchasers will be the highest and best offer received for the properties to be purchased based on a totality of the circumstances including any sale contingencies, terms and conditions of sale, outstanding mortgage debt and taxes, and the purchaser's ability to close.

10.     Depending on the initial responses received by the Trustee from potential purchasers, the Trustee reserves the right to retain the services of a broker to market the portfolio subject to court approval.

### III. **RELIEF REQUESTED**

11.     While a plan of reorganization remains a potential alternative in this case, the Trustee believes that a sale of part of the Debtors' real estate portfolio may enable the Trustee to propose a plan which will provide a substantially quicker distribution to creditors. This Motion seeks to implement a process with the desired goal being a sale of a portion of the Debtor's assets on or before April 30, 2014 without prejudice to the Trustee seeking to sell other portions at later dates. The Trustee believes that this process will enable the Trustee to maximize recovery for creditors. The Trustee proposes this process and sale without presently having a "stalking horse" bidder. Rather, the Trustee seeks a Court-approved sale process in the hopes that prospective purchasers will competitively bid for the assets and thus maximize the offers. If there are multiple bidders, the process may culminate in an auction. The Trustee seeks to establish a sale procedure by which the Trustee may efficiently sell all or some of the real property which is part of the bankruptcy estate subject to approved notice provisions including bid procedures, and that the Trustee shall have the authority to do such pursuant to 11 U.S.C. §§ 363 and 1106.

12.     Under section 363(b) of the Bankruptcy Code, the trustee "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Courts interpreting section 363(b) have held that transactions should be approved when they are supported by the trustee's sound business judgment. *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *In re Continental Airlines, Inc.*, 780 F.2d 1223 (5th Cir. 1986); *In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983). The business judgment test generally requires the trustee to establish (i) that a sound business purpose justifies the sale outside the ordinary course of business; (ii) that adequate and reasonable notice has been

provided to interested parties; (iii) that the debtor has obtained a fair and reasonable price; and (iv) good faith. *See In re Titusville Country Club*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); *In re Phoenix Steel*, 82 B.R. at 335-56. Courts within the Sixth Circuit have permitted pre-confirmation sales of the debtor's assets where a "sound business purpose" exists for the sale. *See*, *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986). *See also, In re The Lady H. Coal Company, Inc.*, 193 B.R. 233, 243 (Bankr. S.D.W.V. 1996) (applying the "sound business purpose" rule); *In re WBQ P'ship*, 189 B.R. 97, 102-04 (Bankr. E.D.V.A. 1995) (same); *In re Naron & Wagner*, *Chartered*, 88 B.R. 85, 87-88 (Bankr. D.Md. 1988) (applying the "sound business purpose" rule).

13. In this case, a sound business purpose exists for the sale of a material portion of the Debtors' real property. After extensive examination of the Debtors' financials and operations, the Trustee believes in order to present the most feasible Plan of Reorganization along with the highest assured return to unsecured creditors, the Debtors' real property portfolio should be downsized for efficiency and profitability. In addition, the scaling back of the Debtors' real property portfolio will yield a considerable amount of liquid funds which can be used upon confirmation for the payment of administrative expenses, priority tax claims and other claims which further alleviates the ongoing financial pressures on the Debtors' under any Plan of Reorganization . In addition, liquidation of certain properties will aid in demonstrating that any plan satisfies the "best interests" test.

14. Pursuant to Section 363(f) of the Bankruptcy Code, the Trustee seeks authority to sell all or part of the Debtor's real property free and clear of all liens, claims, interests and encumbrances, with such encumbrances to attach to the proceeds of sale. In addition, the Trustee

seeks to assume and assign any executory contracts and unexpired leases relating to any properties sold pursuant to 11 U.S.C. § 365. Section 363(f) of the Bankruptcy Code provides as follows:

> (f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
> (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on the property;
> (4) such interest is in bona fide dispute; or
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f)

15. The Trustee requests that the sale procedure order provide that any transfer tax, stamp tax or similar tax, if applicable, shall be borne by the purchaser.

## IV. **PROPOSED SALE AND BID PROCEDURE**

16. The Trustee seeks approval of the following procedure and process (the "Sales Procedures"):

**A. Bid Procedure**

(i) Qualified Bidders. The Trustee shall seek to identify and recognize a number of bidders as qualified to bid on the Assets, based on, among other things, statements of interest and certain financial information provided by the bidder which demonstrates to the Trustee's satisfaction the bidders' financial wherewithal to consummate a purchase of the Assets (each, a "Qualified Bidder"). The Trustee shall notify each Qualified Bidder in writing of its designation as a Qualified Bidder and its ability to participate in the bidding process. Any party interested in purchasing some or all of the Assets may seek to become a Qualified Bidder and participate in the bidding process by notifying the Trustee (at the address set forth in Section (A) (v) below) prior to the First Bid Deadline (as such term is defined below) of its interest in bidding on some or all of the Assets and

      providing such information as may be required by Trustee to demonstrate such potential bidder's financial wherewithal to consummate a purchase of the applicable Assets. The Trustee, in his discretion, may determine which parties constitute Qualified Bidders. Each additional Qualified Bidder will be notified in writing of its designation as a Qualified Bidder. Any lender holding an allowed secured claim against a particular property who makes a credit bid shall automatically be deemed a Qualified Bidder.

(ii) <u>Confidentiality.</u> All persons seeking to become Qualified Bidders and who request a due diligence package of information from the Trustee shall sign on behalf of themselves and/or its clients a confidentiality agreement approved by the Trustee prior to receiving the information;

(iii) <u>Due Diligence.</u> The Trustee will afford to any prospective Qualified Bidder such due diligence access or additional information as may be reasonably requested by the Qualified Bidder and that, in his business judgment, the Trustee determines to be reasonable and appropriate. The Trustee will coordinate all reasonable requests for additional information and due diligence access from prospective Qualified Bidders with Qualified Bidders' requests being treated as a higher priority than prospective Qualified Bidders. Unless otherwise determined by the Trustee in his discretion, the availability of additional due diligence to a Qualified Bidder will cease from and after the Competing Bid Deadline.

(iv) <u>Asset Purchase Agreement</u>. All Qualified Bids shall be accompanied by the purchaser's proposed asset purchase agreement or real estate contract. Upon selection of a Stalking Horse(s), the Asset Purchase Agreement(s) or real estate contract negotiated between the Trustee and Stalking Horse(s) will become the Approved Asset Purchase Agreement(s) (the "Approved APA").

(v) <u>Non-Qualified Bidders</u>. Any potential bidder that is not designated as a Qualified Bidder in accordance with the foregoing shall be disqualified from further participation in the bidding process ("Non-Qualified Bidder"). A Non-Qualified Bidder will not be permitted to conduct due diligence, make a bid for any of the Assets under the Asset Sale Procedures or participate in the Auction (as such term is defined below).

(vi) <u>First Bid Deadline</u>. With respect to each group of properties to be sold by the Trustee, the Trustee shall establish an initial bid deadline with respect to such properties to be communicated to prospective bidders (such date or the date of any last extension granted by the Trustee in his discretion, the "First Bid Deadline"). The Trustee may file a notice of his intent to sell proposed properties with the Court setting forth the First Bid Deadline and sales procedure approved by the Court. A Qualified Bidder that desires to

        make a bid for consideration as a Stalking Horse bid shall submit via electronic mail, facsimile or other delivery service, written copies of its bid to Michael P. Coury, Suite 400, 6000 Poplar Avenue, Memphis, Tennessee 38119, mcoury@glankler.com. Bids received at the First Bid Deadline may still contain acceptable (as determined by the Trustee) limited contingencies, to be removed by the Competing Bid Deadline.

(vii)    <u>Asset Purchase Agreement</u>. All Qualified Bidders must submit to the Trustee an Asset Purchase Agreement or real estate contract along for the submission of Qualified Bids (the "Asset Purchase Agreement" or "APA"). The APA shall:

    a)    provide that the bidder offers to purchase the Assets for cash at closing;
    b)    clearly delineate all components of the proposed purchase price;
    c)    identify the address and/or legal description of each property to be sold;
    d)    clearly state the purchase price offered for each parcel of property included in the aggregate bid in a spreadsheet format to be prescribed by the Trustee;
    e)    provide that the bidder's offer is irrevocable upon acceptance by the Trustee ;
    f)    identify the purchaser and disclose the relationship, if any, between the purchaser and the Debtor and its insiders;
    g)    provide that the bidder's offer is subject to no, or minimal, due diligence contingencies, and if any contingencies, that they be removed by the Competing Bid Deadline, and is not subject to board approval or financing contingency;
    h)    not contain any other material conditions to closing.
    i)    identify any fees, including broker fees if any, in connection with the proposed sale;
    j)    that the assets are being sold "as is" and "where is" with no representation or warranties by the Trustee;
    k)    provide that the purchaser shall assume all future liabilities of seller pursuant to any unexpired leases or executory contracts assigned to purchaser

(viii)    <u>Sales Motion.</u> Upon the First Bid Deadline, the Trustee may negotiate all contract terms with prospective bidders to try to reach an Approved APA. An Approved APA accepted by the Trustee after the First Bid Deadline shall become a "Stalking Horse Bid" with respect to the properties subject to that Approved APA. Upon the Trustee's acceptance of the Stalking Horse Bid after the First Bid Deadline the Trustee shall file a motion seeking approval of such Approved APA(s) and the assumption of any

        unexpired leases and executory contracts relating thereto, pursuant to 11 U.S.C. § 363 which the Trustee, in the exercise of his business judgment, determines is in the best interest of the bankruptcy estate to accept (the "Sale Motion"). Subject to notice and an opportunity for objections, the Court shall conduct a hearing and auction on the motion not sooner than 28 days after the filing of the motion (the "Sale Date").

(ix)     <u>Competing Bids After Sale Motion Filed</u>. Any Qualified Bidder who wishes to submit a competing bid after the filing of the Sale Motion may submit a bid (a "Qualified Competing Bid") pursuant to the bidding procedures below up to 5 business days prior to the Sale Date (the "Competing Bid Deadline"). All Qualified Competing Bids shall be free of any contingencies and in a form substantially the same as the Approved APA. A Qualified Competing Bid must exceed the price set forth in the Approved APA accompanying the Sale Motion by at least 5%. In the event a Qualified Competing Bid is submitted, the Trustee shall conduct an auction as set forth in Section C. below.

**B.**     **Bid Requirements**

(i)     <u>Assets</u>. Qualified Bidders may make a bid for the Assets or some subset thereof. The Trustee reserves the right, in his discretion, to consider bids for combinations of the Assets, and/or may determine specific bidding lots which will be made known to all potential bidders, but are not required to do so.

(ii)     <u>Form and Content of Bid</u>. A Qualified Bidder must submit a signed Asset Purchase Agreement or real estate contract, as described above.

(iii)     <u>Required Supporting Materials</u>. A Qualified Bidder shall accompany its bid with (a) written evidence of available cash, a commitment for financing or ability to obtain a satisfactory financing commitment if selected as the Successful Bidder and such other evidence of ability to consummate the transaction as the Trustee may reasonably request; (b) a copy of a board resolution or similar document demonstrating the authority of the Qualified Bidder to make a binding and irrevocable bid on the terms proposed. A Qualified Bidder submitting a bid on one or more lots which comprise less than all of the assets for sale shall be required to demonstrate that it has available cash, existing line of credit or a commitment for financing which is not contingent upon any condition other than court approval of the sale. To the extent that a Qualified Bidder seeks to purchase any of the Assets subject to existing liens, then such Qualified Bidder's bid must further be accompanied by written evidence

        reasonably satisfactory to the Trustee that the lien holder has agreed (i) to the creditworthiness of such Qualified Bidders, and (ii) to any proposed or required modified payment terms with respect to the retained liens.

(iv) <u>Required Good Faith Deposit</u>. By the First Bid Deadline (or Competing Bid Deadline if a party seeks to compete against a Stalking Horse APA or real estate contract which is the subject of the Sales Motion), a Qualified Bidder must deposit with the Trustee a good faith deposit (the "Good Faith Deposit") in the amount of 10% of its bid on any property,. The Good Faith Deposit must be made by certified check or wire transfer and will be held by the Trustee subject to paragraph E herein. A secured creditor exercising its credit bid rights will not be required to submit a Good Faith Deposit.

(v) <u>Qualified Bid</u>. Subject to the terms of Section C (vi) below, a bid received by the First Bid Deadline from a Qualified Bidder that meets the requirements in Sections B (i)-(iv) is considered a "Qualified Bid." The Trustee reserves the right to waive noncompliance with any one or more of these requirements and to deem any otherwise non-qualifying bid to be a Qualified Bid. A Qualified Bid will be evaluated based upon factors such as: (a) the amount of the Qualified Bid; (b) the fair, net value to be provided to the bankruptcy estate under the Qualified Bid; (c) the ability to close or the likelihood of closing the proposed sale transaction without delay; and (d) any other factors that the Trustee may deem relevant.

(vi) <u>Bid Negotiations</u>. Upon the receipt of Qualified Bids on or before the First Bid Deadline, the Trustee, may negotiate with one or more Qualified Bidders regarding the terms of the applicable Qualified Bids prior to acceptance or rejection of such bids. A bid accepted by the Trustee shall be deemed to be the "Stalking Horse Bid" with respect to the property which is the subject of bid. The purchaser submitting the "Stalking Horse Bid" may be referred to the "Stalking Horse" as it relates to the property subject to the Stalking Horse Bid.

(vii) <u>Rejection of Bid.</u> Notwithstanding the foregoing and except with regard to a secured creditor exercising its credit-bid rights, the Trustee shall be entitled to reject any bid, in his discretion, on any commercially reasonable grounds, including but not limited to the following:

- the bid is on terms that are materially more burdensome or conditional than the terms of this Motion;
- the bid requires any indemnification of such Qualified Bidder in its letter Agreement;

- the bid is not received by the Bid Deadline;
- the bid includes a non-cash instrument or similar consideration;
- the bid requires any regulatory or other approval that would delay the closing;
- the bid does not satisfy Section B;
- the bid contains any material conditions to closing;
- The bid is not in the best interests of creditors.

Any bid rejected pursuant to this Section B (vii) shall not be deemed to be a Qualified Bid.

    **C.**    **Auction Process**

    (i)    <u>Auction</u>.  The Auction will commence at 10:00 a.m. Central Time on a date approved by the Bankruptcy Court at the Procedures Motion hearing which date shall be one (1) business day prior to the Sale Hearing Date. The Auction will be conducted at the offices of Glankler Brown, PLLC, 6000 Poplar Avenue, Memphis, Tennessee 38119 or at such other place designated by the court.

    (ii)    <u>Qualified Participants</u>.  Unless otherwise ordered by the Bankruptcy Court for cause shown, only a Qualified Bidder that has submitted a Qualified Bid and any secured creditor asserting an interest in assets of the estate which may be auctioned, are eligible to participate and attend the Auction.  The Trustee or his representative shall conduct the Auction. Any secured creditor asserting an interest in assets which may be auctioned and their respective representatives are permitted to attend the Auction and exercise their respective credit-bid rights.

    (iii)    <u>Bidding Process and Selection of Successful Bidder</u>.  At the commencement of the Auction, the Trustee shall identify the prevailing highest and best Qualified Bid (s).  . In the event of equal Qualified Competing Bids, the Trustee, in his sole discretion, may select one of the Qualified Competing Bids as the opening bid.  Subsequent bids shall be in the following increments above the previous or opening bid:  (i) if the outstanding high bid is less than $500,000, then subsequent bids shall be in the amount of $10,000, (ii) if the outstanding high bid is in excess of $500,000 but less than $999,999, then the subsequent bid shall be in increments of $ 20,000;(iii) if the outstanding high bid is $1,000,000 or more, then the subsequent bid shall be in increments of $30,000.

    As the auction proceeds, the Trustee may, in his discretion, determine and

announce bid increments as he sees in the best interest of the bankruptcy estate. Upon completion of the Auction, the Trustee shall select the bidder(s) (the "Successful Bidder(s)"), if any, that have submitted the bid, which, in the Trustee's reasonable judgment, represents the highest and best offer(s) and is in the best interest of the Debtor's estate and its creditors (the "Successful Bid").

(iv)    Reserve Amount.  There is currently no minimum bid amount.

(v)     Trustee's Discretion.  The Trustee shall conduct the Auction in accordance with this Section C. The Trustee, in his discretion, may further conduct the Auction in any manner deemed reasonably prudent to obtain the highest and best result for the estate.

(vi)    Sale Approval.  If the stalking horse purchaser remains the best and highest bid at the close of the auction then the Sale Motion hearing will proceed and the financial terms (same or greater) will be announced to the Court at the hearing the next day. If a qualified upset bid is selected by the Trustee then the Court shall approve the sale(s) as modified by the auction results   There will be no further bid solicitation procedure or periods following conclusion of the Sale Hearing;

(vii)   Should there be a dispute as to the best and highest bid then the Sale Hearing shall be continued and the Bankruptcy Court shall hold a hearing within ten (10) days of the Auction to hear and resolve any dispute which may exist between a prospective bidders or the Trustee.  The Bankruptcy Court retains the jurisdiction to determine such other times and dates as it deems appropriate to hear any dispute relative to the Auction, and said hearing may be held upon an emergency notice as deemed appropriate in the sole discretion of the Bankruptcy Court.

**D.    Sale Hearing**

A hearing with respect to the Sale Motion will take place at a date and time established by the Bankruptcy Court at the Procedures Motion hearing.  If any Successful Bidder is selected by the Trustee, in his discretion, will seek the entry of a final order from the Bankruptcy Court at the sale hearing approving and authorizing the proposed sale to the Successful Bidder on terms and conditions substantially consistent with and in accordance with the Sale Procedures.  The Trustee will also seek to have the 2nd highest bid on the Assets or on each lot approved as the "Back-up Bid(s)" in case the Successful Bidder is unable to close.  Objections to any aspect of the relief sought by the Sale Motion must be filed on or before a date established by the Bankruptcy Court at the Procedures Motion Hearing, which date the Debtor shall request to be the date immediately

preceding the Auction Date (the "Objection Date"), and all objections must be actually received on or before 4:00 p.m. (Central time) on the Objection Date.

### E.     Return of Good Faith Deposit

The Good Faith Deposit, together with all interest accrued thereon, if any, shall be returned to any bidder whose bid was not the Successful Bid or the "Back-up Bid". The Good Faith Deposit submitted by the Successful Bidder, together with all interest thereon, if any, shall be applied against the payment of the purchase price, as defined in the relevant Asset Purchase Agreement, at the closing of the sale to the Successful Bidder.  Likewise, upon closing, the Back-up Bidder's deposit will be returned unless the Successful Bidder is unable to close at which point the Successful Bidder's deposit will be forfeited to the Trustee  and the Back-up Bidder will become the Successful Bidder.

### F.     Closing

Closing shall take place within 15 days after an entry of a final order approving the proposed sale to the Successful Bidder unless an earlier time is mutually agreed upon by the Trustee and the purchaser.

### G.     Break Up Fee

If a Stalking Horse(s) is chosen, and at the auction, is subsequently outbid, being ready, willing and able to close, the Stalking Horse shall be entitled to a fee of 2.5% of its initial bid (the "Break Up Fee"), paid from the settlement proceeds of the sale to the subsequent bidder unless the Stalking Horse is the ultimate successful bidder, in which case it shall receive no Break Up Fee.

17.     Full notice of the Sale Motion and hearing date will be given to the Court's mailing matrix as well as any persons or entities who have expressed an interest in acquiring the real property assets of the Debtor.

18.     If no acceptable qualified competing bid is received before the Competing Bid Deadline , then the Asset Purchase Agreement as contained in the Sale Motion shall be deemed the highest and best offer and shall therefore be submitted for approval by the Bankruptcy Court at the hearing.

19. The procedure proposed herein permits the Court to retain undiminished control over the sale of the real property portfolio of the Debtors and any funds received pursuant to any objections or further orders of the Court.

20. The Trustee believes that the sale and bid procedures contained herein are fair, reasonable and in the best interest of the Debtors' estate to maximize the return for the estate's assets in furtherance of achieving a feasible and confirmable Plan of Reorganization.

21. Notice of this Motion has been given to the United States Trustee and all parties listed on the court's matrix.

WHEREFORE the Trustee respectfully requests that the Court grant this motion and enter an order setting forth the same or similar procedures as contained herein above, and for such other, further and general relief to which it may be entitled.

Respectfully submitted,

**GLANKLER BROWN, PLLC**

/s/ Michael P. Coury
J. David Blaylock
Michael P. Coury (7002)
6000 Poplar Avenue, Suite 400
Memphis, TN 38119
(901) 576-1886
mcoury@glankler.com
*Attorneys for the Chapter 11 Trustee*


**BUTLER, SNOW, O'MARA, STEVENS & CANNADA, LLP**

/s/ R. Campbell Hillyer
R. Campbell Hillyer (22124)

        6075 Poplar Avenue, Suite 500
        Memphis, TN 38119
        (901) 680-7200
        cam.hillyer@butlersnow.com
        *Attorneys for the Chapter 11 Trustee*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was provided to the persons listed below via first class U.S. mail, postage prepaid, hand delivery, or facsimile or other electronic means this 15th day of January, 2014.

All parties on the creditor matrix

        /s/ Michael P. Coury

4823-1048-4759, v. 1